UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Michael D. Robenhorst and
Karen S. Robenhorst,
         Debtors.

Chapter 13
Case No. 10-25094-svk

MEMORANDUM DECISION ON
TRUSTEE'S OBJECTION TO CONFIRMATION OF AMENDED PLAN

The issue in this Chapter 13 case is whether the Debtors must dedicate their tax refunds to unsecured creditors in a post-confirmation plan modification, when the original Plan contained no such requirement.

**Background**

Michael B. Robenhorst and Karen S. Robenhorst (the "Debtors") filed a Chapter 13 petition on April 4, 2010. The Court confirmed their original plan on July 19, 2010. The confirmed plan provided for payments of $682 per month for 60 months, with unsecured creditors slated to receive a pro rata share of any funds remaining after priority and secured creditors were paid. As their income is above the state median, the Debtors are required to calculate their projected disposable income on Form B22C. After subtraction of the allowable expenses, the Debtors' Form B22C calculation reveals a negative number for disposable income. Accordingly no amount of projected disposable income must be dedicated to unsecured creditors in this case. In contrast to the Form B22C, at the time they filed their petition, the Debtors' Schedule I income minus Schedule J expenses showed net income of $682 per month.

In calculating their plan payments, the Debtors estimated that the pre-petition arrearage owed to their mortgage creditors was $10,489. However, the plan provided that the proof of claim filed by the creditor would control as to the amount of the arrearage. On August 4, 2011,

after the plan had been confirmed, Wells Fargo Bank, N.A., filed a mortgage arrearage claim for $28,858.96 on the Debtors' first mortgage and a claim of $2,070.93 for the arrearage on the second mortgage. The Debtors then filed an amended plan increasing the payments to $898 per month to account for the increased mortgage arrearage claims, and an amended Schedule J showing a decrease in expenses in order to accomplish the higher payment. The amended plan does not alter the treatment of the unsecured creditors; they will still be paid pro rata if there is anything left over after the secured and priority creditors have been paid.

The Trustee objected to the proposed modification, arguing that the Debtors must dedicate at least 50% of the Debtors' tax refunds to payment of unsecured creditors under the plan. The Debtors contend that they are entitled to their tax refunds because amended plan was filed in good faith and does not affect the rights of unsecured creditors. As proponents of the plan modification, the Debtors bear the burden of proof. *See In re Wetzel*, 381 B.R. 247, 254 (Bankr. E.D. Wis. 2008).

## **Above-Median Debtors' Right to Retain Tax Refunds**

Form B22C, Line 30 provides that above-median debtors calculate their projected disposable income by deducting "the total average monthly expense that [the debtor] actually incur[s] for all federal, state and local taxes, other than real estate taxes and sales taxes, such as income taxes, self-employment taxes, social security taxes and Medicare taxes." This Court first addressed the tax deduction in *In re Stimac*, and held that the Line 30 deduction should equal the amount of taxes actually paid by the debtor during the most recent tax year. 366 B.R. 889 (Bankr. E.D. Wis. 2007). Debtors deducting the amount of taxes actually paid are not required to dedicate any portion of tax refunds toward the plan. *Id.* at 893.

As an alternative for debtors who cannot afford the plan payments necessitated by the deduction of the actual taxes, the Court held in *Stimac* that debtors may deduct monthly payroll tax withholdings. *Id.* However, to compensate for the amount withheld that exceeds the actual tax liability, debtors selecting this option must also dedicate, pursuant to a local custom, 50% of their tax refunds to the plan for payment of unsecured creditors. Although this method may sacrifice some accuracy, a bright-line approach provides efficiency and clarity to the calculation of tax deductions. *Id.*

In this case, the Debtors deducted $1,240.04 on Line 30 representing the actual taxes they paid in the most recent year prior to their Chapter 13 petition. Therefore, under *Stimac*, the Debtors' retention of their tax refunds in the original confirmed plan was justified. The question before the Court is whether that justification survives a post-confirmation plan modification.

## The Proposed Plan Modification

A confirmed Chapter 13 plan may be modified at the request of the debtor, trustee, or an unsecured creditor to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. § 1329(a)(1). Section 1329(b) governs plan modification, and that subsection incorporates the requirements in §§ 1322(a), 1322(b), 1323(c), and 1325(a) into the analysis of whether a modification should be confirmed. Notably absent from the incorporated sections is § 1325(b), requiring dedication of disposable income to the plan. Although some courts have read § 1325(b) into § 1329(b) along with the other requirements, this Court has previously held that the plain meaning of § 1329(b) explicitly excludes a disposable income inquiry under §1325(b). *Compare In re King*, 439 B.R. 129 (Bankr. S.D. Ill. 2010) (§ 1325(b) applies to plan confirmations), *with In re Kearney*, 439 B.R. 694, 696 (Bankr. E.D. Wis. 2010) (citing *In re Young*, 370 B.R. 799, 802 (Bankr. E.D. Wis. 2007) (McGarity, J.) ("[t]he

3

plain meaning of the statute supports the conclusion that modification is not subject to the disposable income test")).  To the extent that the Trustee's Objection to the Debtors' plan modification is based on the argument that the tax refunds are disposable income, the Objection fails, because the approval of a plan modification under § 1329(b) is not subject to the disposable income requirements.

Although the disposable income test is absent, § 1329(b) does incorporate § 1325(a)(3), requiring a good faith determination before a plan modification can be approved.  *In re Young*, 370 B.R. at 802.  In analyzing good faith, the Court examines the totality of the circumstances, including the debtor's income and expenses.  *See In re Love*, 957 F.2d 1350 (7th Cir. 1992). This Court recently decided whether a plan modification was filed in good faith.  *In re Kearney,* 439 B.R. 694.  While the analysis in *Kearney* is applicable here, the circumstances in this case are distinguishable and lead to a different result.  In *Kearney*, an above-median debtor filed a post-confirmation amended plan which reduced the proposed dividend to unsecured creditors from 100% down to 72% and did not dedicate any tax refunds to unsecured creditors.  *Id.* at 695. While the debtor cited decreased income as the reason for the reduction, her supporting documentation suggested otherwise:  The debtor's gross monthly income actually increased after the confirmation of the original plan; and the alleged reduction of income resulted from an unexplained spike in several of the debtor's discretionary expenses.  *Id.* at 696–98.  The Court held that under these circumstances, the debtor's modified plan failed to satisfy the good faith requirement in § 1325(a)(3).  *Id.*  However, the Court was careful to note that its ruling was not intended to force all above-median debtors to contribute 50% of tax refunds to the plan if the modification resulted in a lower dividend for unsecured creditors:  "For example, if the Debtor truly had suffered a reduction in income, and had engaged in belt-tightening as demonstrated by

4

reasonable expense deductions, yet still needed the tax refunds to get by, the analysis would be different." *Id.* at 698.

This case is an example of the exception described in *Kearney*. Approximately one month after confirmation of the original plan, the Debtors' mortgage creditors filed proofs of claim stating arrearages far in excess of the Debtors' original estimates. One claim shows that a foreclosure case had been commenced with thousands of dollars of fees and costs charged to the Debtors' account, and the Debtors' inability to estimate the amount of the mortgage claim with more accuracy is not surprising. Given the increased secured claims, the Debtors' plan was not feasible, and had to be amended. The Debtors tightened their belts, reduced expenses, and dedicated the savings to payment of their secured creditors. Although some of the expenses remain slightly excessive (cable television, recreation, and personal grooming all could be cut), this modification does not adversely affect the unsecured creditors, and merely serves as a correction of the original plan to pay the increased arrearage claims. The Trustee would have had no argument that the Debtors' expenses are unreasonable or that tax refunds must be dedicated to the plan if the Debtors had been able to accurately estimate the arrearage claims in the first place. Therefore, the totality of circumstances suggests that the Debtors' proposed plan modification is filed in good faith and complies with 11 U.S.C. § 1329(b).

The Trustee's Objection is overruled and the plan may be confirmed. The confirmation order should be submitted by the Trustee.

Dated: April 14, 2011

By the Court:

*Susan Kelley*

Susan V. Kelley
U.S. Bankruptcy Judge

5

Case 10-25094-svk    Doc 54    Filed 04/14/11    Page 5 of 5